UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LAWRENCE ELLIOT,

                              Petitioner,

                -v.-

MICHAEL KIRKPATRICK,

                              Respondent.

17 Civ. 7529 (KPF)

**OPINION AND ORDER ADOPTING
REPORT AND RECOMMENDATION**

KATHERINE POLK FAILLA, District Judge:

Pending before the Court is the June 19, 2019 Report and

Recommendation from United States Magistrate Judge Kevin Nathaniel Fox

(the "Report" (Dkt. #46), attached), addressing Petitioner Lawrence Elliot's

petition for a writ of *habeas corpus* (the "Petition").  Judge Fox recommends

that the Petition be dismissed in its entirety.

The Court has examined the Report, Petitioner's August 2, 2019

objections to the report (Dkt. #50),[1] and Respondent's September 3, 2019

submission in response to the objections (Dkt. #51), as well as the parties'

submissions before Judge Fox and the underlying record of the state

---

[1]    Petitioner's September 11, 2019 supplemental response (Dkt. #52) was submitted without
the Court's permission and well after the deadline to file his objections had passed.  (*See*
Dkt. #49).  Accordingly, the Court rejects this untimely and unsanctioned filing, as it
finds no grounds on which to excuse Petitioner's untimeliness in the interest of justice.
*See United States* v. *Male Juvenile*, 121 F.3d 34, 39 (2d Cir. 1997) (observing that a
party's failure to file timely objections may be excused "'in the interest of justice'")
(quoting *Roldan* v. *Racette*, 984 F.2d 85, 89 (2d Cir. 1993)).  Nonetheless, the Court has
reviewed this submission in order to discern *pro se* Petitioner's strongest arguments, and
finds that the reply submission largely repeats previously-raised arguments and thus
need not be considered here.  And to the extent Petitioner's submission raises new
arguments and factual assertions, as discussed in greater detail below, the Court cannot
consider new arguments that Petitioner failed to raise before Judge Fox.  *See United
States* v. *Gladden*, 394 F. Supp. 3d 465, 480 (S.D.N.Y. 2019).

proceedings.  For the reasons set forth below, the Court finds no error in the Report and adopts it in its entirety.

## BACKGROUND[2]

The relevant facts underlying this action are set forth in the Report, and the Court assumes familiarity with them.  A brief overview is set forth herein, drawing from the recitation of the facts in the Report (*see* Report 1-2), as well as from entries in the public docket.

On November 12, 2010, Petitioner was taken into custody in connection with an ongoing investigation into a sexual assault and robbery that had occurred the previous day.  (Dkt. #2 at 7-8).  According to testimony provided by New York City Police Department ("NYPD") detectives, while in an interview room at the police station, Petitioner was asked by a detective for his identification, and responded that he had identification in a "pouch" on his person.  (*Id.* at 8-9).  Upon taking the pouch from Petitioner and emptying its contents onto a table, the detective found the victim's credit and debit cards. (*Id.* at 9).  The pouch and its contents were later vouchered by another NYPD detective.  (*Id.* at 10).  The following day, the victim identified Petitioner as her attacker in a lineup, and Petitioner was placed under arrest.  (*Id.*  at 9).

On December 3, 2010, a New York County grand jury charged Petitioner with three counts each of predatory sexual assault and first-degree criminal

---

[2]    This Opinion draws its facts largely from the Report (Dkt. #46), Petitioner's objections to the Report (the "Objections" (Dkt. #50)), the Petition (Dkt. #2), Respondent's opposition brief to the Petition (the "Opposition" (Dkt. #10)), and the state court record (Dkt. #11-1 to 11-6).

sexual act; two counts each of first-degree sexual abuse and fourth-degree criminal possession of stolen property; and one count each of first-degree robbery, first-degree burglary, second-degree kidnapping, and second-degree strangulation.  (Dkt. #10 at 2-3).  On May 14, 2013, Justice Melissa C. Jackson of the New York County Supreme Court held an evidentiary hearing on Petitioner's motion to suppress the credit and debit cards recovered from his pouch.  (*See* Dkt. #11-4 at 1-107).  Three NYPD detectives testified at the hearing, while the defense presented no evidence.  (*See generally id.*).  Justice Jackson subsequently denied Petitioner's suppression motion in a ruling from the bench, concluding that the search of the pouch was a valid search incident to arrest.  (*Id.* at 97-104).  Alternatively, Justice Jackson found that the victim's cards were "an inevitable discovery" in the course of a proper pedigree inquiry, because the cards had been reported stolen and the police knew that Petitioner had used and possessed them from video surveillance footage of him at an ATM taken prior to his arrest.  (*Id.* at 104).

At a pretrial hearing on June 12, 2013, the Assistant District Attorney informed the court that she had discussed a potential plea with defense counsel, and understood that Petitioner was not amenable to the prosecution's offer.  (Dkt. #11-4 at 111).  In response, the court sought to confirm that Petitioner understood the "maximum" sentence that would accompany a conviction after trial.  (*Id.*).  The court noted in this regard that Petitioner would face "significant consequences should he be convicted at trial," and determined

that Petitioner was facing an aggregate prison sentence of 125 years to life if convicted of all charges in the indictment. (*Id.* at 111-12).

On June 18, 2013, after a series of pretrial decisions unfavorable to Petitioner and the completion of jury selection (*see generally* Dkt. #11-4, 11-5, 11-6), defense counsel informed the court that Petitioner wished to withdraw his previously entered plea of not guilty and enter into a plea agreement negotiated with the prosecution (*see* Dkt. #11-6 at 70). Following a plea colloquy, Petitioner proceeded to plead guilty to one count of predatory sexual assault under New York Penal Law § 130.95(3) and waived his right to appeal. (Report 1; *see also* Dkt. #11-6 at 70-75).

At Petitioner's sentencing on July 10, 2013, he made a *pro se* motion to withdraw his guilty plea, arguing that it had been coerced. (Dkt. #11-6 at 88-92). Justice Jackson denied Petitioner's motion and sentenced him to a term of incarceration of 13 years to life, in accordance with the terms of his plea agreement. (Report 1; Dkt. #11-6 at 93-94).[3]

Thereafter, Petitioner, with the assistance of counsel, appealed his conviction to the Appellate Division, First Department. (*See* Dkt. #11-3 at 3-48). Petitioner raised two arguments on appeal. *First*, Petitioner argued that his plea should be vacated as involuntary because the trial court had

---

[3]     Petitioner subsequently submitted two letters, both dated June 25, 2013, to the Chief Administrative Judge of New York State Supreme Court and the New York State Commission on Judicial Conduct, in which he requested an investigation of Justice Jackson on the grounds that, *inter alia*, Justice Jackson had demonstrated bias, prevented defense counsel from "performing his duties in an effective manner," and threatened Petitioner with a "draconian sentence." (Dkt. #11-2 at 9-12).

threatened to give him the maximum sentence of 125 years to life if he were convicted at trial, and coerced him into pleading guilty by offering to endorse the significantly lower sentence proposed by the prosecution for his pretrial plea. (*Id.* at 25-30). *Second*, he argued that the trial court erred in denying his pretrial motion to suppress credit cards recovered as the result of a warrantless search where: (i) there was no exigency justifying a search incident to arrest; (ii) the prosecutor did not proffer an established inventory search procedure; (iii) the inevitable discovery doctrine did not apply to evidence recovered during an illegal search; and (iv) the evidence was not in "plain view" from a lawful vantage point when seized. (*Id.* at 31-45).

On March 31, 2016, the Appellate Division affirmed Petitioner's conviction on appeal. (Report 1 (citing *People* v. *Elliot*, 27 N.Y.S.3d 386, 386 (1st Dep't 2016))). The court held that Petitioner had failed to preserve his involuntary plea claim, and alternatively that the argument was meritless. (*Id.* at 1-2). The Court further held that Petitioner's waiver of his right to appeal foreclosed review of his suppression claim, and alternatively that his suppression claim was meritless. (*Id.* at 2). Petitioner sought leave to appeal the Appellate Division's decision, but the New York Court of Appeals denied his application. (*Id.* at 2 (citing *People* v. *Elliot*, 27 N.Y.3d 1131 (2016))).

On September 25, 2017, Petitioner filed the instant Petition for *habeas corpus* pursuant to 28 U.S.C. § 2254, raising the same two claims that he asserted on direct appeal. (Dkt. #2). On October 6, 2017, the Court granted Petitioner's request to proceed *in forma pauperis* (Dkt. #3), and referred the

matter to Magistrate Judge Fox for a report and recommendation (Dkt. #5).  On December 22, 2017, Respondent submitted an answer (Dkt. #11), and an opposition brief (Dkt. #10).  Petitioner submitted a reply on June 7, 2019. (Dkt. #45).[4]

On August 19, 2019, Judge Fox issued the Report and recommended that the Court dismiss the Petition in its entirety.  (Report 6).  Petitioner's objections to the Report were filed on August 9, 2019.  (Dkt. #50).  Respondent submitted an opposition to the objections on September 3, 2019 (Dkt. #51), to which Petitioner filed a reply on September 19, 2019 (Dkt. #52).

## DISCUSSION

### A.    Applicable Law

A court may accept, reject, or modify, in whole or in part, the findings or recommendations made by a magistrate judge.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Grassia* v. *Scully*, 892 F.2d 16, 19 (2d Cir. 1989).  A court may also accept those portions of a report to which no specific, written objection is made, as long as the factual and legal bases supporting the

---

[4]    Prior to filing his reply brief, Petitioner made two submissions (*see* Dkt. #16, 21) that Judge Fox construed as applications for leave to amend the Petition and stay the proceedings so as to allow Petitioner to exhaust his state court remedies as to: (i) a *coram nobis* application challenging his appellate counsel's performance; and (ii) a motion to vacate Petitioner's judgment of conviction pursuant to New York Criminal Procedure Law § 440.10 that asserted ineffective assistance of trial counsel and the trial court's bias. (Dkt. #17, 23).  In an order issued on March 30, 2018, Judge Fox denied Petitioner's application, finding that his claims were barred by the statute of limitations and did not relate back to the initial Petition.  (Dkt. #23).  Following the March 30, 2018 Order, Petitioner again moved for permission to amend his Petition (Dkt. #39), and his renewed motion was denied by Judge Fox on January 25, 2019 (Dkt. #40).  Petitioner has continued to argue that he should be granted leave to amend his Petition, both in his reply to Respondent's opposition brief as well as his Objections.  (Dkt. #45, 50).

findings are not clearly erroneous.  *See Ramirez* v. *United States*, 898

F. Supp. 2d 659, 663 (S.D.N.Y. 2012) (citation omitted).  A magistrate judge's

decision is clearly erroneous only if the district court is "'left with the definite

and firm conviction that a mistake has been committed.'"  *Easley* v. *Cromartie*,

532 U.S. 234, 242 (2001) (quoting *United States* v. *U.S. Gypsum Co.*, 333 U.S.

364, 395 (1948)).

Where a party submits timely objections to a report and

recommendation, as Petitioner has done here, the Court is obligated to review

the contested issues *de novo*.  *See* Fed. R. Civ. P. 72(b)(3); *Hynes* v. *Squillace*,

143 F.3d 653, 656 (2d Cir. 1998).  However, where objections are "conclusory

or general," or where the petitioner "simply reiterates his original arguments,"

the report should be reviewed only for clear error.  *Walker* v. *Vaughan*, 216

F. Supp. 2d 290, 292 (S.D.N.Y. 2002) (internal quotation marks and citation

omitted); *see also Phillips* v. *Reed Grp., Ltd.*, 955 F. Supp. 2d 201, 211

(S.D.N.Y. 2013) ("Objections that are merely perfunctory responses argued in

an attempt to engage the district court in a rehashing of the same arguments

set forth in the original papers will not suffice to invoke *de novo* review."

(citation, quotation marks, and alteration omitted)).  And although *pro se* filings

are read liberally and interpreted "to raise the strongest arguments that they

suggest," *Pabon* v. *Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (citation omitted),

"even a *pro se* party's objections ... must be specific and clearly aimed at

particular findings in the magistrate's proposal[,]" *DiPilato* v. *7-Eleven, Inc.,* 662

F. Supp. 2d 333, 340 (S.D.N.Y. 2009) (citation omitted).  Finally, "it is sufficient

that the court arrive at its own independent conclusion regarding those portions of the report to which objections are made"; the court "need not conduct a *de novo* hearing on the matter." *In re Hulley Enters. Ltd.*, 400 F. Supp. 3d 62, 69 (S.D.N.Y. 2019) (quoting *Nelson* v. *Smith*, 618 F. Supp. 1186, 1189-90 (S.D.N.Y. 1985)).

**B.    Analysis**

**1.    Petitioner's Involuntary Plea Claim Is Procedurally Barred and Without Merit**

In his briefing before Judge Fox, Petitioner contended that his guilty plea was coerced and involuntary as a matter of law because "the court threatened to give him the maximum sentence of 125 years to life if he were convicted after trial, but offered a significantly lower sentence for his pretrial plea." (Report 2). Petitioner asserted that the trial court should have granted his *pro se* motion to withdraw his plea made during sentencing. (*Id.*). Respondent argued that Petitioner's involuntary plea claim was procedurally barred from federal review and meritless. (*Id.* at 3).

Following a review of the relevant state law, Judge Fox correctly determined that Petitioner's claim was procedurally barred from federal habeas review because it had been denied as unpreserved by the state appellate court. (Report 5). The Appellate Division determined that Petitioner had failed to preserve his involuntary plea claim for appellate review because his "remarks at sentencing neither clearly requested to withdraw the plea nor articulated the ground he raises on appeal[.]" *People* v. *Elliot*, 27 N.Y.S.3d 386, 386 (1st Dep't

8

2016).  Judge Fox further concluded that New York's contemporaneous objection rule[5] provided an independent and adequate state-law procedural ground for the Appellate Division's refusal to review Petitioner's claim that itself foreclosed federal habeas review.  (Report 4-5).

To overcome this bar, Petitioner was required either to establish "'cause' to excuse the procedural default and demonstrate that he suffered actual prejudice from the alleged error," *Davila* v. *Davis*, — U.S. —, 137 S. Ct. 2058, 2062 (2017), or to demonstrate that he was "actually innocent" of his offenses of conviction, *Murray* v. *Carrier*, 477 U.S. 478, 496 (1986).  Judge Fox correctly concluded that Petitioner had made neither of these showings.  (Report 3-5).[6] On this basis, the Report properly determined that Petitioner's claim was barred from habeas relief.

Additionally, the Court agrees with Respondent that even if Petitioner had established cause to excuse procedural default or offered evidence to

---

[5]   This rule "preserves for review only those questions of law as to which 'a protest ... was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same.'" *Garcia* v. *Lewis*, 188 F.3d 71, 78 (2d Cir. 1999) (quoting N.Y. C.P.L. § 470.05).

[6]   In his reply to Respondent's Opposition, Petitioner quoted from the transcript of his attempted plea withdrawal in which he asserted to the trial court that he was "not guilty." (Dkt. #45 at 6).  However, this transcript excerpt does not suffice to demonstrate Petitioner's "actual" innocence for these purposes.  *See Murray* v. *Carrier*, 477 U.S. 478, 496 (1986) (determining that a federal court may grant the writ of *habeas corpus* "in an *extraordinary case*, where a constitutional violation has probably resulted in the conviction of one who is *actually innocent*" (emphases added)).

Additionally, in his Objections, Petitioner purports to establish cause to excuse procedural default and resulting injustice, asserting that he had been temporarily removed from Rikers Island on the day he was to be interviewed for his presentence investigation report.  (Dkt. #50 at 6).  While is it unclear how these allegations are intended to establish cause to excuse the failures outlined by the Appellate Division, even were they relevant, a court will not consider new arguments that litigants elected not to raise before the magistrate judge.  *See Gladden*, 394 F. Supp. 3d at 480.

demonstrate his innocence — and Petitioner failed to do either — his claim
cannot succeed on the merits.  Petitioner argued that his plea had been
coerced based on statements made by the trial court that if he were convicted,
he would "probably" be given the "maximum" sentence.  (Dkt. #2 at 12-13
(quoting the June 12, 2013 pre-plea proceeding)).  However, these statements
could not be said to have a coercive impact because Petitioner *rejected* the plea
at the time the statements were made.  (*Id.* at 13).[7]  Indeed, Petitioner only
accepted the plea six days later, following several unfavorable pretrial rulings.
(*See generally* Dkt. #11-4, 11-5).

Moreover, Petitioner's statements at his guilty plea represented "a
voluntary and intelligent choice among the alternative courses of action open to
[him]."  *North Carolina* v. *Alford*, 400 U.S. 25, 31 (1970).  Petitioner was
represented by counsel during the plea colloquy, and stated under oath that
among other things, he had had sufficient time to talk with counsel before
pleading guilty and that he was satisfied with his attorney's representation.
(Dkt. #11-6 at 72).  Significantly, when asked by the court whether anyone had
forced him to plead guilty, Petitioner responded, "No."  (*Id.* at 74).  As
Respondent correctly noted, Petitioner had pleaded guilty on several prior
occasions to criminal conduct (Dkt. #10 at 28), further suggesting that his plea
in the underlying case was not involuntary.  *See Riggins* v. *Rock*, No. 12 Civ.

---

[7]   While Petitioner now characterizes the trial court's statements as coercive, they could also
be viewed as providing a candid assessment of the choices Petitioner faced, and of the
risks in proceeding to trial.  Indeed, at the time she made the challenged statements,
Justice Jackson proceeded to emphasize:  "I just want to make that clear that your client
understands that this is his choice."  (Dkt. #11-4 at 113).

3903 (NSR) (GAY), 2013 WL 5738232, at *12 (S.D.N.Y. Oct. 21, 2013) (noting that the fact that petitioner was "not a novice to the criminal justice system" supported a finding that he had knowingly and voluntarily entered into a guilty plea).

This record amply demonstrates that Petitioner's plea was knowingly and voluntarily entered.  Thus, even if Petitioner's involuntary plea claim were not procedurally barred, its lack of merit would foreclose it from federal habeas review.  Accordingly, the Court finds no clear error in the Report's recommendation as to this claim.

## 2. Petitioner's Fourth Amendment Claim Does Not Provide Grounds for Habeas Relief

Petitioner's second claim was that the trial court erred in denying his "motion to suppress evidence obtained as the result of a warrantless search." (Report 2).  Specifically, Petitioner challenged the trial court's decision to admit credit cards recovered from a pouch he had on his person when he was taken into custody.  (*Id.* at 2-3).  Judge Fox agreed with Respondent that Petitioner's Fourth Amendment claim was precluded from federal habeas review pursuant to the Supreme Court's decision in *Stone* v. *Powell*, 428 U.S. 465, 482 (1976), which holds that where a habeas petitioner was provided "an opportunity for full and fair litigation of [his] Fourth Amendment claim, the Constitution does not require that [he] be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.*

11

Judge Fox further explained that Petitioner had failed to establish either of the limited circumstances in which he could receive federal habeas relief for such a claim under *Stone*, namely, where (i) the state failed to provide a "corrective procedure" to redress his Fourth Amendment claim; or (ii) the state had such procedures but he was "precluded from utilizing it by reason of an unconscionable breakdown in that process." *Gates* v. *Henderson*, 568 F.2d 830, 840 (2d Cir. 1977).  As Respondent observed in his Opposition, the trial court held a hearing on Petitioner's motion to suppress, during which Petitioner was represented by counsel.  (Dkt. #10 at 31).  Following this hearing, Justice Jackson ruled that while NYPD officers did not have Petitioner's permission to search the pouch, the credit cards were admissible under New York law, among other reasons, because they resulted from a search incident to a lawful arrest and were properly inventoried.  (Report 2-3; *see also* Dkt. #11-4 at 97-104).

Petitioner does not argue that he was not provided a correct procedure to redress his Fourth Amendment claim.  And indeed, there is no basis for such an argument, as the Second Circuit has indicated that New York's procedure for litigating Fourth Amendment claims is "facially adequate." *Capellan* v. *Riley*, 975 F.2d 67, 70 n.1 (2d Cir. 1992) (citation omitted).  Petitioner also has not argued that the process by which he litigated his Fourth Amendment claims resulted in an unconscionable breakdown.  Rather, he has merely disagreed with the trial court's decision on his motion.  *See id.* at 72 ("[A] mere disagreement with the outcome of a state court ruling is not the equivalent of

an unconscionable breakdown in the state's corrective process."). Because the state did not fail to provide a "corrective procedure," and because the record reflects no "unconscionable breakdown" of that procedure, Judge Fox correctly found that Petitioner's Fourth Amendment claim could not be brought in a habeas petition.

### 3.   Petitioner's Remaining Objections Fail

In lieu of specific objections, Petitioner advances several arguments that are conclusory, general, or reiterate those made in either his initial Petition or his subsequent submissions before Judge Fox. (*See, e.g.,* Dkt. #45). In particular, with respect to Petitioner's arguments regarding ineffective assistance of counsel, as Respondent noted in his September 3, 2019 response to the Objections (*see* Dkt. #51 at 1 n.1), Judge Fox previously denied Petitioner's motion to amend the Petition to add this claim, both because it was barred by the statute of limitations and because it did not relate back to the original Petition (*see* Dkt. #23). As to the remainder of Petitioner's objections, which include new factual assertions, "'it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.'" *United States* v. *Gladden*, 394 F. Supp. 3d 465, 480 (S.D.N.Y. 2019) (citation omitted); *see also Jackson* v. *Brandt*, No. 10 Civ. 5858 (PAC) (KNF), 2012 WL 2512015, at *6 (S.D.N.Y. June 29, 2012). Therefore, the Court will not consider the arguments that Petitioner raises for the very first time in his papers objecting to the Report.

**CONCLUSION**

The Court agrees with Judge Fox's well-reasoned Report and hereby adopts its reasoning in its entirety.  Accordingly, it is ordered that the Petition is DISMISSED with prejudice.

Since Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue.  *See* 28 U.S.C. § 2253(c).  Pursuant to 28 U.S.C. § 1915(a), any appeal from this Order would not be taken in good faith; therefore *in forma pauperis* status is denied for the purpose of any appeal.  *Coppedge* v. *United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.  The Clerk of Court is also directed to transmit a copy of this Opinion and Order to Petitioner at his address of record.

SO ORDERED.

Dated:     November 13, 2020
           New York, New York

_____
     KATHERINE POLK FAILLA
     United States District Judge

14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
LAWRENCE ELLIOT,

                                  Petitioner,    :

                         -against-       :    **REPORT AND RECOMMENDATION**

MICHAEL KIRKPATRICK,          :    17-CV-7529 (KPF) (KNF)

                         Respondent.    :
------------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE KATHERINE POLK FAILLA, UNITED STATES DISTRICT JUDGE

### BACKGROUND

Lawrence Elliot ("Elliot"), proceeding pro se, filed a petition for a writ of habeas corpus,

pursuant to 28 U.S.C. § 2254, alleging: (1) his guilty plea was "involuntary where the court

threatened to give him the maximum sentence of 125 years to life if he were convicted after trial,

but offered a significantly lower sentence for his pretrial plea"; and (2) the court erred in denying

his "motion to suppress evidence obtained as the result of a warrantless search." The respondent

opposes the petition.

Elliot pleaded guilty to one count of an indictment charging, inter alia, predatory sexual

assault under New York Penal Law § 130.95(3) and waived his right to appeal. He was

sentenced to 13 years to life, in accordance with the plea agreement into which he had entered.

The state appellate court denied Elliot's appeal, finding that: (i) Elliot's claim "that his plea was

rendered involuntary by the court's allegedly coercive statements about his potential sentence is

unpreserved because his remarks at sentencing neither clearly requested to withdraw the plea nor

articulated the ground he raises on appeal" and, alternatively, it is meritless; and (ii) the "waiver

of his right to appeal, which forecloses review of his suppression claim," was valid and,

alternatively, his erroneous suppression denial claim is meritless.  People v. Elliot, 137 A.D.3d

715, 716, 27 N.Y.S.3d 386, 386 (App. Div. 1ˢᵗ Dep't 2016).  Leave to appeal from that decision

was denied by the New York Court of Appeals.  People v. Elliot, 27 N.Y.3d 1131, 39 N.Y.S.3d

113 (2016).

### PETITIONER'S CONTENTIONS

Elliot asserts that his guilty plea was involuntary and his pro se motion to withdraw his

plea as coerced, made at sentencing, should have been granted.  Elliot contends that "the court

threatened to give him the maximum sentence of 125 years to life if he were convicted after trial,

but offered a significantly lower sentence for his pretrial plea."  Thus, his plea was coerced and

involuntary as a matter of law.

Elliot contends that the court erred in denying his motion to suppress evidence obtained

as the result of a warrantless search where: (a) "there was not exigency justifying a search

incident to arrest"; (b) "the prosecutor did not proffer an established inventory search

procedure"; (c) "the inevitable discovery doctrine does not apply to evidence recovered during

an illegal search"; and (d) "the evidence was not in 'plain view' fro[m] a lawful vantage point

when seized."  At the suppression hearing held to determine the admissibility of credit cards in

Elliot's name that were recovered from a pouch he had on his person when he was taken into

custody, New York City Police Department Detectives Kenneth Fiol ("Fiol"), Frank Humphreys

and Steven Lane ("Lane") testified.  According to Elliot,

[a]lthough Fiol had possession of the pouch for the purpose of finding petitioner's identification, he did not "take possession" of it then because "that would have been something done by the arresting officer." [M 41]. The pouch was filled with miscellaneous papers [and] ID's, and it was kind of already popping open or popping out [M 26]. Fiol just pretty much dumped [the pouch] onto a table.[] and proceeded to rummage through it for identification [M 7].

Fiol testified that he did not obtain Elliot's permission to search the pouch. Lane testified that he did not search Elliot when he arrested him, since the credit cards in Elliot's name were already recovered from the pouch when Elliot was taken into custody. The court rejected Elliot's argument that the credit cards should be suppressed as the fruit of an illegal search. The court ruled that the credit cards were admissible, as they resulted from a search incident to a lawful arrest and were inventoried properly.

### RESPONDENT'S CONTENTIONS

The respondent contends that Elliot's involuntary plea claim is barred on an adequate and independent state-law ground, the preservation rule, and meritless. Elliot failed to preserve his claim by making a motion to withdraw his plea or moving to vacate his conviction after sentencing, pursuant to New York Criminal Procedure Law § 440.10. Moreover, Elliot did not move to withdraw his plea at sentencing despite registering numerous complaints about the plea.

The respondent contends that Elliot's Fourth Amendment claim is barred from habeas corpus review by: (i) the Supreme Court's decision in Stone v. Powell, 428 U.S. 465, 96 S. Ct. 3037 (1976); and (ii) an independent state-law ground, namely, Elliot's waiver of his right to appeal contained in the plea agreement. The respondent asserts that Elliot failed to establish cause for his defaulted claims or resulting prejudice and he does not offer any evidence to establish that he is actually innocent.

### PETITIONER'S REPLY

In reply, Elliot inappropriately: (1) challenges the Court's March 30, 2018 denial of his motion to amend the petition and for a stay of the proceedings; (2) renews his application for appointment of counsel; and (3) makes new factual assertions.

### LEGAL STANDARD

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim — (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

> 28 U.S.C. § 2254(d).

"[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). A habeas corpus petitioner must exhaust all remedies available in the state courts. See 28 U.S.C. § 2254(b)(1)(A).

> Federal habeas courts reviewing convictions from state courts will not consider claims that a state court refused to hear based on an adequate and independent state procedural ground. A state prisoner may be able to overcome this bar, however, if he can establish "cause" to excuse the procedural default and demonstrate that he suffered actual prejudice from the alleged error. An attorney error does not qualify as "cause" to excuse a procedural default unless the error amounted to constitutionally ineffective assistance of counsel.

> Davila v. Davis, __ U.S. __, 137 S. Ct. 2058, 2062 (2017).

To establish cause for a procedural default, a petitioner must demonstrate that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645 (1986). "[F]ederal habeas

4

review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim." Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990). New York's contemporaneous objection rule has been recognized by federal courts as an independent and adequate state-law ground and "is not rendered 'inadequate' on account of novelty or sporadic application." Garcia v. Lewis, 188 F.3d 71, 79 (2d Cir. 1999). "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone, 428 U.S. at 482, 96 S. Ct. at 3046.

### APPLICATION OF LEGAL STANDARD

Elliot's claim that his guilty plea was involuntary because "the court threatened to give him the maximum sentence of 125 years to life if he were convicted after trial, but offered a significantly lower sentence for his pretrial plea," is procedurally barred because it was denied as unpreserved by the state court. Since New York's contemporaneous objection rule has been recognized by federal courts as an independent and adequate state-law ground, see Garcia, 188 F.3d at 79, Elliot must establish cause to excuse his procedural default and resulting prejudice or that he is actually innocent. See Murray, 477 U.S. at 496-97, 106 S. Ct. at 2649-50. Elliot failed to establish cause for his procedural default and resulting prejudice and he does not claim that he is actually innocent. Accordingly, granting habeas corpus relief on Elliot's claim that his plea was not voluntary, is not warranted.

Elliot's claim that the court erred, by denying his "motion to suppress evidence obtained as the result of a warrantless search," is precluded from federal habeas review. See Stone,

5

428 U.S. at 482, 96 S. Ct. at 3046.  Elliot does not assert that New York failed to provide a corrective procedure to redress his Fourth Amendment claim or that he was "precluded from utilizing it by reason of an unconscionable breakdown in that process." Gates v. Henderson, 568 F.2d 830, 840 (2d Cir. 1977).  Accordingly, granting habeas corpus relief on Elliot's Fourth Amendment claim is not warranted.

<b>RECOMMENDATION</b>

For the foregoing reasons, I recommend that the petition be denied.

**FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Katherine Polk Failla, 40 Centre Street, Room 2103, New York, New York, 10007, and to the chambers of the undersigned, 40 Centre Street, Room 425, New York, New York, 10007.  Any requests for an extension of time for filing objections must be directed to Judge Failla. *Failure to file objections within fourteen (14) days will result in a waiver of objections and will preclude appellate review.* See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

Dated: New York, New York
       June 19, 2019

Copy mailed to:

Lawrence Elliot

Respectfully submitted,

*Kevin Nathaniel Fox*

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE